**LOEB & LOEB LLP**
Schuyler G. Carroll
Noah Weingarten
345 Park Avenue
New York, New York 10154
Tel.: (212) 407-4000
scarroll@loeb.com
nweingarten@loeb.com

*Attorneys for Brian Ryniker,*
*Litigation Administrator*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------ X
                                                  :   Chapter 11
IN RE:                                            :
                                                  :   Case No. 19-71020 (REG)
DÉCOR HOLDINGS, INC., *et. al.*,[1]              :   Case No. 19-71022 (REG)
                                                  :   Case No. 19-71023 (REG)
      Post-Confirmation Debtors.          :   Case No. 19-71024 (REG)
                                                  :   Case No. 19-71025 (REG)
------------------------------------------------------------ X
BRYAN RYNIKER, IN HIS CAPACITY AS                 :   (Substantively Consolidated)
LITIGATION ADMINISTRATOR OF THE                   :
POST-CONFIRMATION ESTATES OF                      :   Hon. Robert E. Grossman
DÉCOR HOLDINGS, INC., *et al.*,                   :
                                                  :
      Plaintiff,                           :
                                                  :
    v.                                      :
                                                  :   Adv. Pro. No. 20-08140 (REG)
VALDESE WEAVERS, LLC,                             :
                                                  :
      Defendant.                           :
------------------------------------------------------------ X

## THE LITIGATION ADMINISTRATOR'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO BAR PLAINTIFF FROM INTRODUCING EVIDENCE PRODUCED AFTER THE FACT DISCOVERY DEADLINE

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Décor Holdings, Inc. (4174); Décor Intermediate Holdings LLC (5414); RAD Liquidation Inc. (f/k/a The Robert Allen Duralee Group, Inc.) (8435); RAD Liquidation LLC (f/k/a The Robert Allen Duralee Group, LLC) (1798); and RADF LLC (f/k/a The Robert Allen Duralee Group Furniture, LLC) (2835).

Plaintiff Brian Ryniker in his capacity as the Litigation Administrator (the "Litigation Administrator") of the post-confirmation estates of Décor Holdings, Inc., *et al.* (the "Debtors"), by and through counsel, submits this opposition to Defendant Valdese Weavers, LLC's ("Defendant" or "Valdese") motion *in limine* [Dkt. No. 21] (the "Valdese Motion") to bar the Litigation Administrator from introducing PX-12 to 28 (the "Subject Exhibits") at the trial of this adversary proceeding.

## ARGUMENT

### I. Legal standards and factors for allowing introduction of the Subject Exhibits.

1.  Under Rule 37(c)(1) of the Federal Rules of Civil Procedure, as made applicable by Rule 7037 of the Federal Rules of Bankruptcy Procedure, a party that does not comply with Fed. R. Civ. P. 26's disclosure requirements (*i.e.*, by producing responsive documents after the discovery cutoff) may still introduce such evidence if "the failure was substantially justified or is harmless."

2.  "In determining whether preclusion or another sanction is appropriate, courts in this Circuit consider '(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the . . . precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new [evidence]; and (4) the possibility of a continuance.'" *New York City Transit Auth. v. Express Scripts, Inc.*, 19-CV-5196 (JMF), 2022 U.S. Dist. LEXIS 36166, at *29-30 (S.D.N.Y. Mar. 1, 2022) (denying request to preclude introduction of evidence of damages); *accord Ali v. Dainese USA, Inc.*, No. 19 Civ. 2422 (KPF), 2021 U.S. Dist. LEXIS 242649, at *43-45 (S.D.N.Y. Dec. 17, 2021) (applying same factors and declining to preclude introduction of late produced evidence).

3.  Each of these factors overwhelmingly weigh against preclusion and in favor of permitting the Litigation Administrator to admit the Subject Exhibits.

**II.     Factor 1 (explanation for the late production):  The Subject Exhibits were not in the Litigation Administrator's possession, which he had to obtain from third-parties.**

4.     There is a very good reason for the late production of the Subject Exhibits: the Litigation Administrator did not have them in his possession, custody, or control and had no obligation to obtain them, but nevertheless, did so.

5.     As this Court is aware, the Litigation Administrator was appointed after the sale of the Debtors' assets.  On May 6, 2019, this Court entered the Order confirming the plan [Dkt. No. 303], which approved of the sale of substantially all of the Debtors' assets, including the Debtors' emails (and the Subject Exhibits).  On June 28, 2019 – almost three months after the sale of the Debtors' assets – the Litigation Administrator was appointed [Dkt. No. 339].  On August 25, 2020, the Litigation Administrator commenced this adversary proceeding against Defendant (after reviewing the books and records of transfers, which were available to the Litigation Administrator, and conducting due diligence into Defendant's reasonably knowable affirmative defenses).

6.     On February 16, 2021, Defendant served its first and only set of document requests on the Litigation Administrator (the "Document Requests"), which states that "[t]hese requests are intended to cover all documents, . . . in your possession or otherwise subject to your custody or control, regardless of the location of such documents, including those in the possession, custody, or control of your employees, agents, representatives, attorneys, advisors, or consultants."

7.     Prior to receiving the Document Requests the parties had numerous informal discussions concerning discovery.  During these discussions, the Litigation Administrator made clear that there were many documents that Defendant wanted, which were not in the Litigation Administrator's possession, custody, or control.

8.     On April 19, 2021, the Litigation Administrator served his responses to the Document Requests and again confirmed that many of the requested documents were not in the

possession, custody, or control of the Litigation Administrator. In this regard, the Litigation Administrator expressly objected:

> The Litigation Administrator objects to the Demands to the extent that they seek the production of documents from the above-captioned debtors (the "Debtors") or RADG Holdings LLC (the "Buyer"). Timothy Boates, the Plan Administrator (the "Plan Administrator"), appointed under section 3 of the Findings of Fact, Conclusions of Law and Order (I) Confirming Third Amended Joint Chapter 11 Plan of Liquidation Proposed by the Debtors and (II) Approving the Sale of Substantially all of the Debtors' Assets (Dkt. No. 303) (the "Plan"), or the Buyer may have additional responsive documents responsive to this Request, however the Litigation Administrator does not have possession, custody, or control over documents, communications, or other information in their possession, custody, or control.

9. Thus, the Litigation Administrator's responses and objections (the "Discovery Responses") to Defendant's Document Requests made clear that certain requested documents were not in the Litigation Administrator's possession, custody, or control. At the same time, the Litigation Administrator made clear that the Debtors, the Plan Administrator, and/or the buyer may have responsive documents.

10. Defendant never raised with this Court any challenges to the Litigation Administrator's Discovery Responses despite having over fifteen months – between April through present – to do so, thereby conceding the Litigation Administrator's possession. Nor did Defendant did not take any steps to obtain such documents from the parties who had the documents in their possession.

11. Despite Defendant's failure to undertake any diligence to obtain documents from the correct party, the Litigation Administrator obtained the documents in March 2022. The Litigation Administrator reviewed these documents and produced them to Defendant almost immediately thereafter, on April 4, 2022 – prior to the final pre-trial hearing held on April 6, 2022 – thereby giving Defendant months to review the Subject Exhibits.

**III.        Factor 2 (importance of the Subject Exhibits):  The Subject Exhibits are critical for substantiating the Litigation Administrator's claim under section 549 (Count 3) to show that the post-petition transfers occurred out of the ordinary course.**

12.     Courts routinely refuse to exclude "highly relevant" evidence such as the Subject Exhibits.  *THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 234 n.124 (S.D.N.Y. 2010) (denying request to exclude evidence that was produced after close of discovery because evidence was "highly relevant and Disney has suffered no prejudice by their admission"); *New York City Transit Auth.,* 2022 U.S. Dist. LEXIS 36166, at *30 (denying preclusion of plaintiff's late produced evidence, in part, because plaintiff would only be able to demonstrate nominal damages if damages evidence were excluded).

13.     The Subject Exhibits are highly relevant to the Litigation Administrator's Count 3 for unauthorized transfers.  Pursuant to Fed. R. Bankr. P. 6006, Defendant bears the burden of "asserting the validity of a transfer under § 549 of the Code."  If Defendant is able to meet its initial burden of proof, then the Subject Exhibits would demonstrate that Defendant would be unable to meet its ultimate burden to prove that the post-petition transfers were within the ordinary course – for numerous reasons, including:

(i)     Defendant sought to recoup its pre-petition losses by upcharging the Debtors for goods that the Debtors could only obtain from Defendant;

(ii)    Defendant changed the payment terms by no longer shipping goods on credit, instead requiring payment before shipment;

(iii)   Defendant required that payments be made via wire – not check (as was permitted pre-petition); and

(iv)    Defendant utilized self-help in consummating a self-imposed setoff against the post-petition debt it was owed without Court authorization.

14.     Thus, the Subject Exhibits are highly relevant to the Litigation Administrator's case, thus warranting denial of the relief that Valdese requests.

**IV.     Factor 3 (prejudice to Defendant): There is no prejudice to Defendant because the Subject Exhibits were produced over three months ago and the majority were in Defendant's possession already, and even if there were prejudice, it was caused by Defendant's lack of diligence to acquire the Subject Exhibits**

15. The only prejudice that Valdese claims is that "the Late Production [left] Defendant no opportunity to seek a deposition or supplemental discovery based on the documents produced during the fact discovery period." Valdese Motion at ¶ 8. But that alleged prejudice is of Valdese's own making for several reasons.

16. **First**, Valdese never even attempted to take any other discovery. Valdese never served deposition notices or any additional document requests after their first (and only) set of document requests.

17. **Second**, at the April 6, 2022 final pre-trial conference – after the Litigation Administrator produced the Subject Exhibits – the Litigation Administrator expressly asked the Court to "extend [the pretrial order] briefly to allow us to take discovery." Transcript 10:4-6 (Valdese Motion, Ex. B). In response, Valdese refused this request by responding "I don't know what else to do other than to go to trial. We're prepared" (*Id.* at 12:18-19) and "[y]ou don't come now and ask to open up discovery." *Id.* at 13:2-3. Thus Defendant put itself in the very position – and created the alleged prejudice – that it now complains of.

18. **Third**, the vast majority of the Subject Exhibits are emails to or from Valdese custodians and thus Valdese can claim no sandbagging because those emails were already in Valdese's possession, custody, and control. *New York City Transit Auth.*, 2022 U.S. Dist. LEXIS 36166, at *31 (party seeking preclusion "will not be unduly prejudiced by having to prepare to meet evidence . . . to which it has had access all along"). Indeed, nearly every single document is an email involving Valdese' personnel or its counsel. For example:

      a.    PX-12 and 13: Emails involving Michael Shelton, Valdese's President and Chief Executive Officer.

      b.      PX-14: Emails involving Michael Fox, counsel to Valdese.

      c.      PX-15: Emails involving Bob Walters, Valdese's Senior Vice President of Customer Relations.

      d.      PX-16 and 17: Emails involving Michael Shelton, Valdese's President and Chief Executive Officer.

      e.      PX-18: Emails involving Michael Shelton and Bob Walters of Valdese.

      f.      PX-22, 23, and 24: Emails involving Bob Walters.

19. **Fourth**, Valdese has had these exhibits for over three months, as they were produced prior to the final pre-trial conference. Valdese cannot claim surprise – and certainly not from any of the documents that were always in its own possession, custody, and control.

## V. Factor 4 (continuance).

20. There is virtually no chance of a continuance being granted at the eve of trial. Indeed, the Court ruled "We're going to trial. And no documents will be admitted that were subject to subpoena or discovery and not produced by either side." Tr. 15:5-7. The posture that Valdese now finds itself in is entirely its own fault.

## VI. This Court already ruled against Valdese on this issue.

21. As noted above, at the final pre-trial conference, the Court already ruled that "no documents will be admitted that were subject to subpoena or discovery and not produced by either side." Tr. 15:5-7. The Subject Exhibits that Valdese seeks to exclude were produced prior to that date. Accordingly, the Subject Exhibits may not be excluded and the motion should be denied.

[Remainder of Page Intentionally Left Blank]

## CONCLUSION

WHEREFORE the Litigation Administrator respectfully requests that the Court deny the Valdese Motion.

| | |
|---|---|
| Dated: New York, New York<br>July 21, 2022 | **LOEB & LOEB LLP**<br><br>By: /s/ *Schuyler G. Carroll*<br>Schuyler G. Carroll<br>Noah Weingarten<br>345 Park Avenue<br>New York, New York 10154<br>Tel.: (212) 407-4000<br>scarroll@loeb.com<br>nweingarten@loeb.com<br><br>*Attorneys for Brian Ryniker,*<br>*Litigation Administrator* |

22512235