**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------ X
                                                       :    Chapter 11
                                                      :
                                                      :    Case No. 19-71020 (REG)
IN RE:                                                 :    Case No. 19-71022 (REG)
                                                      :    Case No. 19-71023 (REG)
DÉCOR HOLDINGS, INC., *et. al.*,[1]           :    Case No. 19-71024 (REG)
                                                      :    Case No. 19-71025 (REG)
             Post-Confirmation Debtors.      :
                                                      :    (Substantively Consolidated)
                                                      :
                                                      :    Hon. Robert E. Grossman
------------------------------------------------------------ X
BRYAN RYNIKER, IN HIS CAPACITY AS    :
LITIGATION ADMINISTRATOR OF THE     :
POST-CONFIRMATION ESTATES OF         :
DÉCOR HOLDINGS, INC., *et al.*,             :
                                                      :
             Plaintiff,                              :
                                                      :    Adv. Pro. No. 20-08140 (REG)
            v.                                     :
                                                      :
VALDESE WEAVERS, LLC,                 :
                                                      :
             Defendant.                         :
------------------------------------------------------------ X

## DEFENDANT'S PRE-TRIAL MEMORANDUM

                                       Michael S. Fox
                                       Jonathan T. Koevary
                                       Olshan Frome Wolosky LLP
                                       1325 Avenue of the Americas
                                       New York, New York 10019
                                       (212) 451-2300

                                       *Attorneys for Defendant*

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Décor Holdings, Inc. (4174); Décor Intermediate Holdings LLC (5414); RAD Liquidation Inc. (f/k/a The Robert Allen Duralee Group, Inc.) (8435); RAD Liquidation LLC (f/k/a The Robert Allen Duralee Group, LLC) (1798); and RADF LLC (f/k/a The Robert Allen Duralee Group Furniture, LLC) (2835).

Table of Contents

Page

Introduction ...................................................................................................................................1

      A.     The Parties ............................................................................................................2

      B.     Pertinent Facts .......................................................................................................2

Issues for Trial ..............................................................................................................................4

      A.     The Litigation Trustee Cannot Satisfy His Prima Facie Preference Burden under 11 U.S.C. § 547(b) ..........................................................................4

      B.     Valdese has a Complete New Value Defense .......................................................6

      C.     Valdese has a Complete Ordinary Course of Business Defense ..........................8

      D.     Valdese Was Under No Obligation to Accept Prepetition Purchase Orders on Postpetition Basis and the Automatic Stay Was Not Violated ................................................................................................................10

      E.     The Postpetition Transfers were Authorized under the Bankruptcy Code .....................................................................................................................10

Reservation of Rights ..................................................................................................................13

Conclusion ..................................................................................................................................13

Table of Authorities

Page

CASES

*Begier v. Krain Outdoor Advert., Inc. (In re Am. Int'l Airways, Inc.)*,
   68 B.R. 326 (Bankr. E.D. Pa. 1986),
   *aff'd,* Civ. A. 87-1287, 1987 WL 54484 (E.D. Pa. May 12, 1987) ..........................................7

*Cruickshank v. George R. Roberts Co. (In re Boston Grand Prix, LLC*),
   599 B.R. 448 (Bankr. D. Mass. 2019) ....................................................................................7

*Ctr. City Healthcare, LLC*, v. *McKesson Plasma & Biologics LLC*
   *(In re Ctr. City Healthcare, LLC)*,
   No. 19-11466 (MFW), 2022 WL 2133974 (Bankr. D. Del. June 13, 2022) ............................5

*Hirsch v. Pennsylvania Textile Corp. (In re Centennial Textiles, Inc.)*,
   227 B.R. 606 (Bankr. S.D.N.Y. 1998)...................................................................................12

*Husted v. Taggart (In re ECS Refining, Inc.)*,
   625 B.R. 425 (Bankr. E.D. Cal. 2020)....................................................................................4

*In re Atlanta Retail, Inc.*,
   287 B.R. 849 (Bankr. N.D. Ga. 2002) ..................................................................................12

*In re Decor Holdings, Inc.*,
   No. 19-71020 (REG), 2022 WL 348625 (Bankr. E.D.N.Y. Feb. 3, 2022)........................... 8-9

*In re Fairfield Sentry Ltd.*,
   539 B.R. 658 (Bankr. S.D.N.Y. 2015)...................................................................................11

*In re Laskaratos*,
   605 B.R. 282 (Bankr. E.D.N.Y. 2019)...................................................................................10

*In re Lavign*e,
   114 F.3d 379 (2d Cir. 1997)..................................................................................................11

*In re Neri Bros. Constr. Corp.*,
   593 B.R. 100 (Bankr. D. Conn. 2018) ..................................................................................11

*Krohn v. ADM Milling Co. (In re Dependable Food Prods., Inc.)*,
   193 B.R. 662 (Bankr. E.D.N.Y. 1996)................................................................................ 6-7

*Miller v. JNJ Logistics LLC (In re Proliance Int'l, Inc.)*,
   514 B.R. 426 (Bankr. D. Del. 2014) .......................................................................................7

*New York City Shoes, Inc. v. Bentley Int'l, Inc. (In re New York City Shoes, Inc*.),
   880 F.2d 679 (3d Cir. 1989)...................................................................................................7

Table of Authorities
(continued)

Page

*S. Tech. College, Inc. v. Hood*,
    89 F.3d 1381 (8th Cir. 1996) ..................................................................................................7

*Shell Oil Company v. Waldron (In re Waldron)*,
    785 F.2d 936 (11th Cir.1986) ................................................................................................12

*Zeta Consumer Prods. Corp. v. Equistar Chem., L.P.*
    *(In re Zeta Consumer Prods. Corp.)*,
    291 B.R. 336 (Bankr. D.N.J. 2003) .....................................................................................7, 8

STATUTES

11 U.S.C.
    § 362...................................................................................................................................3, 10
    § 363.............................................................................................................................3, 11, 12
    § 547..................................................................................................................................... 3-8
    § 549.................................................................................................................................10, 12
    § 1107........................................................................................................................................10
    § 1108.................................................................................................................................. 10-11

Small Business Reorganization Act of 2019, Pub. L. No. 116-54 § 3(a) ........................................4

OTHER AUTHORITIES

Fed. R. Civ. Pro. 8............................................................................................................................5

Fed. R. Evid. 1006 ...........................................................................................................................8

Defendant Valdese Weavers, LLC ("Valdese" or the "Defendant"), by its attorneys Olshan Frome Wolosky LLP, respectfully submits this pre-trial memorandum pursuant to the Court's Final Pretrial Order.

## Introduction

This case is straightforward. Valdese, a major prepetition supplier to the Debtors, has a complete new value defense for all but less than $4,000 of the $477,000 preference claim brought before it which amount is covered by its ordinary course defense. The Litigation Trustee, who never conducted pre-litigation due diligence concerning his claims and Defendant's affirmative defenses, has ignored overwhelming evidence including, but not limited to, purchase orders, bills of lading, and invoices demonstrating same. The Litigation Trustee asks the Court to also ignore all evidence and offers nothing to rebut it. In fact the Litigation Trustee concedes that the relevant books and records held by the Debtors were transferred to the buyer and is trying to shift his burden to Valdese.

The Litigation Trustee has conceded that he has no prepetition fraudulent transfer claim. The automatic stay claim cannot prevail as the Debtors were not individuals and there was no violation in any event, as Litigation Trustee concedes there was no supply agreement. That leaves the postpetition transfer claim, pursuant to which Valdese agreed to provide postpetition goods to the chapter 11 Debtors only upon revised terms, which the Debtors readily accepted, which were ordinary course by definition, and ultimately resulted in a 17% increase over prepetition pricing or a $61,125 net increase, and, as a mere rounding error in the context of Valdese's prepetition claim of over $2.5 million, were not used toward its satisfaction. For these reasons, Valdese should prevail on all counts.

A.   The Parties

On February 12, 2019 (the "Petition Date"), the above captioned debtors (the "Debtors") commenced these cases by filing voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court. Prior to the Petition Date, Valdese regularly supplied custom fabrics to the Debtors. As of the Petition Date, the Debtors owed over $2.5 million to Valdese. *See* PX-5, PX-6.

Bryan Ryniker ("Plaintiff" or "Litigation Administrator") was appointed as the Litigation Administrator pursuant to the Debtors' Third Amended Joint Chapter 11 Plan of Liquidation (the "Plan"). The Plan went effective on May 6, 2019 [Dkt. No. 310] (the "Effective Date").

B.   Pertinent Facts

Between November 14, 2018 and December 18, 2018, the Debtors made 17 transfers (the "Transfers") to Valdese that aggregated to $477,730.20. Stip. Facts. ¶ 7. These Transfers were made within 90 days of the Petition Date on account of antecedent debt. *Id.* ¶ 7. 12. Thereafter, and prior to the Petition Date, Valdese delivered additional goods having a value of $474,058.46. Def's Ex. 1. The new value goods came in two buckets. Bucket No. 1 aggregating to $329,367.67 was shipped directly from Valdese. Bucket No. 2 was shipped from a third party supplier who made custom goods at Valdese's behalf called "Krypton" aggregating to $144,690.79. *See* Def's Ex 1, 2, 19 (Reclamation Demand, Invoice BOL Listing, RADF Invoice Listing).

Although the Debtors had placed outstanding purchase orders as of the Petition Date, these orders were not binding upon Valdese. In fact, "[a]s of the Petition Date, there was no supply agreement between the Debtors and Valdese." Stip Facts. ¶ 16.

Between the Petition Date and the Effective Date, the Debtors operated their businesses in the ordinary course as debtors in possession. In fact, through their first day motions filed on the Petition Date, the Debtors took the position that continued operation was essential to maintain

value in connection with any plan or sale. For example, the Debtors' first day motion seeking debtor in possession financing asserted:

> The funds provided by the DIP Facility are essential to enable the Debtors to continue to operate during the course of these chapter 11 cases while working towards a sale transaction that is in the best interest of the estates. Indeed, failure to obtain approval of the DIP Facility will lead to an immediate wind-down of the Debtors' business operations which, in turn, will preclude any going-concern sale of the Debtors' assets and adversely affect the value ultimately received by stakeholders.

Debtors' Motion for Authority to Obtain Credit Under Section 364(b), Rule 4001(c) or (d) /Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and (B) Use Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364, and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) dated February 12, 2019 ¶ 18 [Dkt. No. 13]. *See also Declaration of Lee Silberman In Support of Chapter 11 Petitions and First Day Motions* ¶ 98 [Dkt. No. 3] *"*(Post-Petition financing, in addition to the use of cash collateral, is necessary in order for the Debtors to have access to sufficient liquidity to maintain ongoing day-to-day operations, ensure proper servicing of customers post-petition, and fund working capital needs. Absent post-petition financing and the use of cash collateral, the Debtors will be forced to wind-down their operations due to a lack of funds.").

As part of the Debtors' operations, the Debtors placed postpetition purchase orders with Valdese. As a condition for accepting the postpetition purchase orders, Valdese required payment by wire and a cancellation of any outstanding prepetition orders where the goods had not already been segregated for the Debtors. These were all custom orders.  Valdese would not agree to extend postpetition business on credit.   Valdese shipped $357,896.45 in goods to the Debtors after the

petition date. Def's 20. The Debtors accidently overpaid for the goods and Valdese returned $40,069 as part of a reconciliation. Stip. Facts ¶¶ 27-28.

Plaintiff commenced this adversary proceeding without alleging or offering and has not offered any evidence concerning his reasonable due diligence prior to commencement, concerning the Defendant's affirmative defenses or otherwise.

## Issues for Trial

A. <u>The Litigation Trustee Cannot Satisfy His Prima Facie Preference Burden under 11 U.S.C. § 547(b)</u>

The Small Business Reorganization Act of 2019, Pub. L. No. 116-54 § 3(a), effective February 19, 2020 amended Bankruptcy Code section 547. The amendment added the following relevant highlighted language: "Except as provided in subsections (c), (i), and (j) of this section, the trustee may, ***based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c)***, avoid any transfer of an interest of the debtor in property, if [it can demonstrate each of (b)(1) through (b)(5) were met]." (emphasis added).

The amendment requires a trustee to conduct a reasonable due diligence that among other things, takes into account a party's known or reasonably knowable affirmative defenses (the "Due Diligence Requirement"). Notably, the Due Diligence Requirement on its terms is a condition precedent found in section (b) of 547 (listing the elements) as opposed to section (c) (listing the defenses). *Husted v. Taggart (In re ECS Refining, Inc.)*, 625 B.R. 425, 453-58 (Bankr. E.D. Cal. 2020) appears to be the first reported decision to discuss the Investigation Requirement. It too noted that the Due Diligence Requirement is a condition precedent to bringing a preference action. *Id.* at 453-54.

After thorough analysis including legislative intent (as a check on preference mills) and a comparison to several other statutes and Supreme Court interpretation of another statute concerning condition precedents, it held that the Due Diligence Requirement was an "element of the trustee's prima facie case" and that "Congress has expressly allocated the burden of proof on the issue of due diligence under § 547(b) to the trustee." *Id.* at 454, 56. And "where applicable substantive law treats a condition precedent as an element of the prima facie case, rather than an affirmative defense, it must be plead." *Id.* at 457. Ultimately, the Court concluded that "Congress has expressly allocated the burden of proof on the issue of due diligence under § 547(b) to the trustee." *Id.* at 456. *See also Ctr. City Healthcare, LLC* v. *McKesson Plasma & Biologics LLC (In re Ctr. City Healthcare, LLC)*, No. 19-11466 (MFW), 2022 WL 2133974, at *6 (Bankr. D. Del. June 13, 2022) (denying motion to dismiss where the *"*Complaint allege[d] that the Debtors conducted an analysis of the Transfers made to the Defendants during the Avoidance Period and whether they were protected from avoidance by any applicable defense.").

In *City Healthcare*, Judge Walrath found it unnecessary to opine on whether the Due Diligence Requirement was an element, because on a motion to dismiss, she found an allegation in the complaint of due diligence having occurred sufficient to meet the pleading standard under FRCP 8 without more detail. *Id.* *5-6.

The Complaint in this adversary proceeding was brought after February 19, 2020. Here, unlike in *City Healthcare*, there is simply no allegation of due diligence to be found in the Complaint. The Litigation Trustee has neither produced nor presented for any exhibit any evidence of due diligence. The Litigation Trustee in fact appears to have conducted none.  His counsel has stated numerous times that the books and records for the debtor were transferred to the Buyer of the business, but no inquiry had ever been made concerning Valdese's affirmative defenses.

5

Notably, Valdese's counsel had an active role in the case from the beginning. The Litigation Trustee was chosen by the creditors' committee and is represented by the same counsel. And both the Litigation Trustee counsel and Valdese's counsel appeared together at the confirmation hearing. Moreover, as of the confirmation hearing, Valdese's proofs of claims had been filed that included prima facie evidence of Valdese's new value defense to the preferences. Yet, the Litigation Trustee never even did so much as inquire of Valdese's counsel about Valdese's affirmative defenses before bringing the action. The failure to consider the new value defense or inquire of Valdese's counsel cannot be reasonable due diligence.  As this Court may recall from the confirmation hearing, it warned Mr. Caroll to be careful and not to simply commence suits based on payments alone.  Obviously that warning was ignored.

The Litigation Trustee cannot meet his burden that he conducted any due diligence, much less reasonable due diligence. For that reason, Plaintiff cannot meet its burden to avoid any transfer under section 547(b) of the Bankruptcy Code.

B.      <u>Valdese has a Complete New Value Defense</u>

Legal Standard for Subsequent New Value Defense

1.      Section 547(c) of the Bankruptcy Code provides that:

> The trustee may not avoid under this section a transfer . . .
>
> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor —
>
> (A) not secured by an otherwise unavoidable security interest; and
>
> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

The subsequent new value defense "serves the legislative goal of encouraging creditors to continue doing business with financially troubled debtors." *Krohn v. ADM Milling Co. (In re*

*Dependable Food Prods., Inc.)*, 193 B.R. 662, 666 (Bankr. E.D.N.Y. 1996) (internal citations omitted); *see also S. Tech. College, Inc. v. Hood*, 89 F.3d 1381, 1384 (8th Cir. 1996) ("The purpose of § 547(c)(4) is to encourage creditors to deal with troubled businesses in the hope of rehabilitation.") (internal citations omitted); *Miller v. JNJ Logistics LLC (In re Proliance Int'l, Inc.)*, 514 B.R. 426, 430 (Bankr. D. Del. 2014) ("The subsequent new value defense is intended to encourage creditors to work with companies on the verge of insolvency.") (internal citations omitted).

Section 547(c)(4) "protects creditors who deal with financially unstable businesses and reasonably rely on their payments as a consideration for providing these future services*."* *Begier v. Krain Outdoor Advert., Inc. (In re Am. Int'l Airways, Inc.)*, 68 B.R. 326, 337 (Bankr. E.D. Pa. 1986), *aff'd,* Civ. A. 87-1287, 1987 WL 54484 (E.D. Pa. May 12, 1987); *see also New York City Shoes, Inc. v. Bentley Int'l, Inc. (In re New York City Shoes, Inc*.), 880 F.2d 679, 680-81 (3d Cir. 1989) (Section 547(c)(2) allows creditors to "rely on payments of back debt in shipping new goods . . . ."). "[A] creditor who contributes new value in return for payments from the incipient bankrupt … should not later be deemed to have depleted the bankruptcy estate to the disadvantage of other creditors." *S. Tech. College*, 89 F.3d at 1384 (internal citations omitted).

"The date for determining the time when new value is provided by the creditor to the debtor is when the new value is delivered." *Cruickshank v. George R. Roberts Co. (In re Boston Grand Prix, LLC*), 599 B.R. 448, 474 (Bankr. D. Mass. 2019). A defendant may establish when new value has been provided in various ways, including the submission of bills of lading or other similar information to prove when delivery of the new value has occurred. *See, e.g., Zeta Consumer Prods. Corp. v. Equistar Chem., L.P. (In re Zeta Consumer Prods. Corp.)*, 291 B.R. 336, 356-57 (Bankr. D.N.J. 2003). In *Zeta* the Court found that defendant made out a prime facie

case its product was delivered for new value after presenting bills of lading and tracking information and that the plaintiff would "have to come forward with some evidence at trial supporting its contention of non-delivery." *Id.* at 357.

Here, the Reclamation Demand (Def's Ex. 1) identifies additional goods delivered by having a value of $474,058.46. Def's Ex. 1 (the "New Value Amount"). The shipments comprising the New Value Amount came in two buckets and the Debtors' carrier was the shipper. Bucket No. 1 aggregating to $329,367.67 was shipped directly from Valdese. Bucket No. 2 was shipped from a third party supplier who made custom goods at Valdese's behalf called "Krypton" aggregating to $144,690.79. *See Def's Ex 1* (Reclamation Demand). Def's Exhibits 1, 2, and 19 detail the amounts and timing of the shipments through summary charts prepared by the Defendant. Def's Exhibits 3-13 provide bills of lading matching to vast majority of shipments and bills of lading, In addition, pursuant to FRE 1006, on April 29, 2022, Defendant provided detailed invoices to Plaintiff as underlying evidence supporting each and every new value transaction. Defendant has met its burden and the Plaintiff has not "come forward" with any evidence to refute what Defendant has provided. As the total Transfers aggregate to $477,730.20, has a total defense to all but $3,700 of the preference claim.

C.     Valdese has a Complete Ordinary Course of Business Defense

Under Bankruptcy Code section 547(c)(2) a trustee may not avoid a transfer:

> to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—
>
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee.

Courts have adopted different tests, but as noted by this Court in *In re Decor Holdings, Inc.*, No. 19-71020 (REG), 2022 WL 348625, at *2 (Bankr. E.D.N.Y. Feb. 3, 2022), this Court

noted that "the two most common tests are the average-lateness method and the total-range method" and that "[t]he starting point – and often the ending point – involves consideration of the average time of payment after the issuance of the invoice during the pre-preference and post-preference periods, the so-called 'average lateness' computation theory." . . . "If the differences in averages is not material, the analysis ends there and all of the preference period transfers are deemed in the ordinary course." *Id.* (internal marks and citations omitted).

This Court adopted the average lateness test in its February 2022 opinion. *Id.* at *3. Defendant submits that the rational of the February 2022 decision applies here. Here, during the preference period (covering around 350 transactions) the average days late was approximately 50 days late. This difference of less than 2 or 3 days is not substantial or meaningful, and thus the preference period transfers are all ordinary and the ordinary course analysis is complete.

Valdese submits that the ordinary course analysis in this matter is complete based on the average comparison test because (a) the averages are so similar, and (b) neither average is skewed by any outliers, payments, all the preference period payments are concentrated around the historic average (within 50 days of that average).

This Court's February Décor decision found that the defendants there fell within the average lateness test. But further found for the defendants under the alternative total range bucketing test. Likewise here, Defendant submits that it has a complete ordinary course defense following the average lateness test and that the Court should stop there. But alternatively, Defendant has a complete defense under the total range/bucket test because: under a total range test, virtually all of the Transfers are protected because they paid invoices between 40 days and 62 days late, only 2 invoices were beyond this range, one was 129 late and the other was 80 days late payments. These were for negligible amounts of $678 and $417 respectively, as all other payments

were made between 40 and 62 days, except for one invoice which was for 2 days and was for $21,412. See Def's Exs. 14- 15.

D.  <u>Valdese Was Under No Obligation to Accept Prepetition Purchase Orders on Postpetition Basis and the Automatic Stay Was Not Violated</u>

"As of the petition Date, there was no supply agreement between the Debtors and Valdese." Stip Fact ¶16. Valdese was not bound as of the petition date to honor any purchase orders. They were simply requests. Plaintiff cannot meet its burden showing a contract requiring Valdese to honor any prepetition purchase order. Because Defendant was not contractually obligated to honor any prepetition purchase order, Defendant's cancellation of the orders was not a violation of the automatic stay under section 362 of the Bankruptcy Code. Moreover, Plaintiff cannot have any cause of action under Bankruptcy Code section 362(k). By its terms, Bankruptcy Code section 362(k) requires a debtor be an individual. As noted by Judge Stong: "Courts in this Circuit recognize that a party seeking damages for a violation of the automatic stay must prove the following elements: "(1) that a bankruptcy petition was filed, (2) that the debtor is an individual, (3) that the creditor received notice of the petition, (4) that the creditor's actions were in willful violation of the stay, and (5) that the debtor suffered damages." *In re Laskaratos*, 605 B.R. 282, 299 (Bankr. E.D.N.Y. 2019) (internal quotes and citations omitted). Here the debtor was not an individual so there can be no damages for violation of the automatic stay.

E.  <u>The Postpetition Transfers were Authorized under the Bankruptcy Code</u>

Bankruptcy Code section 549 authorizes the trustee to avoid postpetition transfers not "authorized under this title or by the Court." However, all of the post-petition transfers were authorized under the Bankruptcy Code.

Bankruptcy Code section 1107 gives debtors in possession the powers of a trustee under the Bankruptcy Code. In turn, section 1108 provides that "[u]nless the court, on request of a party

in interest and after notice and a hearing, orders otherwise, the trustee may operate the debtor's business." Finally, section 363(c) of the Bankruptcy Code provides that unless the Court orders otherwise "the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing."

The postpetition orders and price structure were based on a postpetition agreement with the debtor in possession. The postpetition debtor paid Valdese in the ordinary course. Valdese delivered the goods ordered in accordance with the postpetition terms.

> The term "ordinary course of business" generally has been accepted "to embrace the reasonable expectations of interested parties of the nature of transactions that the debtor would likely enter in the course of its normal, daily business.... Although never specifically articulated by [the Second Circuit], two tests have emerged to determine whether a transaction is 'ordinary.' These tests are (1) the 'creditor's expectation test' also known as the 'vertical test,' and (2) the 'industry-wide test' also called the 'horizontal test.' ... Under this two-part analysis, [t]he touchstone of 'ordinariness' is thus the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business.... Under the vertical test, the court views the disputed transaction from the vantage point of a hypothetical creditor and inquires whether the transaction subjects a creditor to economic risks of a nature different from those he accepted when he decided to enter into a contract with the debtor.... The horizontal test involves an industry-wide perspective in which the debtor's business is compared to other like businesses. In this comparison, the test is whether the post-petition transaction is of a type that other similar businesses would engage in as ordinary business." *In re Lavigne*, 114 F.3d 379, 384-85 (2d Cir. 1997), s*ee also In re Fairfield Sentry Ltd*., 539 B.R. 658, 675 (Bankr. S.D.N.Y. 2015), subsequently aff'd, 690 Fed.Appx. 761 (2d Cir. 2017) (summary order).

*In re Neri Bros. Constr. Corp.,* 593 B.R. 100, 151–53 (Bankr. D. Conn. 2018). The postpetition transactions met both the horizontal and vertical tests and fell under "the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business." *Id*. at 152. The Court approved various first day motions allowing the Debtor to

operate in the ordinary course. There was nothing unusual or unexpected about the Debtor entering into post-petition supply agreements for fabric for Valdese. It would be practically unheard of for chapter 11 debtors to seek court approval for a change in postpetition terms.

"For the Court to hold otherwise, would condone the Debtors to use section 363 of the Bankruptcy Code as a sword, after it induced the other party to expend significant sums of money in a joint endeavor geared to provide substantial promotional benefits to both parties. The bankruptcy laws were not "intended to be used as a sword by the rapacious." *In re Atlanta Retail, Inc.*, 287 B.R. 849, 858 (Bankr. N.D. Ga. 2002) (finding the postpetition transaction to be ordinary course & quoting *Shell Oil Company v. Waldron (In re Waldron),* 785 F.2d 936, 940 (11th Cir.1986).

For its "Brief Statement Summarizing the Case" in its Joint Pretrial Memorandum, the Litigation Administrator unilaterally chose to file a brief instead for its Exhibit H. That brief cites to *Hirsch v. Pennsylvania Textile Corp. (In re Centennial Textiles, Inc.)*, 227 B.R. 606 (Bankr. S.D.N.Y. 1998) for the proposition that revised postpetition terms cannot be ordinary course under section 363(c). *Centennial* is readily distinguishable. There the "complaint charge[d] that the debtors and [supplier] entered into a fraudulent scheme to pay down [supplier's] prepetition debt. *Id.* at 608. At trial, the trustee proved that the supplier overcharged the debtors by 68% on average for processing services and the Court concluded that the debtor's overpaid for those services as part of a scheme to reduce the supplier's prepetition debt. *Id.* at 609. The Court found that these "transfers were made on account of prepetition debts, and were unauthorized" and as such, were avoidable under section 549(a). *Id.* at 610. And even there, the court only found liable for the overcharge amount, not the entire amount of the postpetiton transfers. *Id.* at 610, 614.

That is not what happened here. Valdese did not "overcharge" to pay down prepetition debt. Valdese insisted on new pricing terms as a condition for supplying the Debtors postpetition (and there, again, was no supply agreement). The Debtors could have accepted or rejected Valdese's demand, but chose to accept in order to maintain its going concern rights. And where Valdese is seeking to recover all of the postpetition transfers which exceed $350,000, the purported "overcharge" in this case was $61,125 and even under *Centennial* which is readily distinguishable, only that $61,125 should be at stake. The notion that the "overcharge" of $61,125, amounting to .024% of Valdese's prepetition claim, constituted any sort of reduction in the prepetition claim is simply not credible.

## Reservation of Rights

Defendant's election to file this optional brief pursuant to the Court's Final Pretrial Order is not an express or implied waiver concerning any argument not advanced herein. Defendant reserves all rights to raise such argument at trial or in subsequent briefing.

## Conclusion

For the foregoing reasons, Valdese respectfully requests that this Court enter judgment in its favor of the Defendant on all counts.

Dated: New York, New York
       July 21, 2022

By:   */s/* Michael S. Fox

     Michael S. Fox
     Jonathan T. Koevary
     Olshan Frome Wolosky LLP
     1325 Avenue of the Americas
     New York, New York 10019
     (212) 451-2300

     *Attorneys for Defendant*